# City of East St. Louis v. Alexander Flannigen et al.

1. OFFICIAL BONDS—*General Rule Where Plaintiff has Misled Officer.*—The general rule is that the penalty of an official bond can not be invoked where the plaintiff has done anything directly or indirectly to mislead the officer.

2. CITIES AND VILLAGES—*Estoppel to Deny Validity of Directions to City Treasurer.*—A city should not be heard to complain that in pursuance of its own ordinances its treasurer accepted warrants of former years for licenses or treated funds claimed by the school authorities as part of the common funds of the city. He should not be required to overrule the judgment of the council as to whether such course could be safely pursued, nor should he be required to suffer if their action in that regard was irregular, unwise or illegal.

3. SAME—*Treasurer's Duty and Liability as to Anticipation Warrants.*—A city can not complain of its treasurer for not paying warrants drawn against future receipts not appearing on their face to be valid anticipation warrants, nor can it be permitted to insist that its treasurer was bound to know that such warrants were wrongfully drawn and recover from him if he did pay them.

**Debt,** on an official bond. Appeal from the Circuit Court of St. Clair County; the Hon. GEORGE W. WALL, Judge, presiding. Heard in this court at the August term, 1896. Affirmed. Opinion filed March 3, 1897.

FORMAN & WATTS, attorneys for appellant.

TURNER & HOLDER, attorneys for appellees.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

After a careful examination of the record in this case, the conclusions reached affecting the vital issues, and the reasons therefor, are fully set forth in the opinion of the learned judge who tried the case on the circuit, which opinion we adopt.

OPINION OF JUDGE WALL:

The ground of recovery mainly urged by the plaintiff is that the defendant Flannigen, as treasurer, misapplied the

funds received by him in that capacity, to a large extent, by paying the same on warrants issued during former years, when the funds of the city during his official term were not sufficient to meet necessary current expenses.

It appears that for a number of years the city was indebted beyond the constitutional limit, and the argument is, therefore, that a payment of warrants drawn under that general condition except out of the funds of the year against which the warrants were specially drawn, amounts to no payment whatever, and that the treasurer is in no respect discharged thereby, but that he and his sureties must respond to the city for any sum so misapplied. It seems to have been the view of the Appellate Court, when this case was before it on the pleadings, Vol. 34, p. 596, that such payments would not discharge the treasurer except when the payments are directed by the city, and then only to the extent of whatever surplus there might be of the revenues of the current year after paying all warrants drawn or to be drawn against such revenues.

Hence, counsel have sought to show whether there was any such surplus, which, by direction of the city, might be so used. On behalf of plaintiff it is insisted that the revenues of the fiscal year, 1885, were not sufficient to meet the current expenses, and that though the treasurer collected of the revenues of that year over $42,000, he paid warrants of that year to the sum of less than $35,000, and that he ought to account for the difference of over $7,000.

As to the fiscal year 1886, plaintiff also claims that the revenues were insufficient, and that by similar calculation and process of reasoning the treasurer is chargeable with over $29,000 in respect to the revenues of that year.

Thus it is sought to recover from him and his sureties, on his official bond, the sum of about $37,000 because of this alleged misappropriation of the funds, by paying the warrants issued in former years out of the revenue of current years. On the other hand, counsel for defense insist that there was a surplus of revenue in each year, more than sufficient to cover all the warrants of former years so alleged to have been paid.

City of East St. Louis v. Flannigen.

As the respective calculations are each based upon the proofs, it will be found that the different results so reached are mainly due to the different treatment of two important items:

1st. The item of one-half of the money derived from dram-shop licenses, which by the city charter belongs to the local public schools.

This item for the two years, covered in part by the official term of defendant, approximated $40,000.

2d. The item of current expenses which according to the position of plaintiff should include the interest on overdue coupons, amounting together for the year 1885, to over $40,000, and for the year 1886 to over $42,000.

For these interest dues no warrants were ever issued or ordered issued, except so far as judgments may have been obtained against the city on account of unpaid interest, and it appears that a part at least of the disbursements made by defendant was in payment of such a judgment.

As to the dram-shop license money, it is shown that the city, by ordinance passed before defendant was appointed treasurer and during the term of his predecessor, assumed control of the entire fund, provided that the same should be held as a part of the city funds and expressly prohibited the treasurer from paying any portion of the same to the schools.

This ordinance was in force during the whole of the defendant's term and until after his successor was appointed.

Indeed, by an ordinance passed not long before he retired from the office, it was provided that $18,931.55, "now a surplus in the hands of the city treasurer, derived from one-half of the dram-shop license," be placed in the street and alley fund. Presumably, this was a part of the one-half which was claimed by the schools, and which the city had assumed to retain, and which it had forbidden its treasurer to pay to the schools. It also appears that during the whole of defendant's term and for years before there had been an ordinance in force making all city warrants receivable for licenses and all other dues to the city, and that during the

defendant's term an ordinance was passed making the warrants of 1885 receivable for licenses.

Why this latter ordinance was passed is not apparent, as its entire scope seems to be included within the provisions of an ordinance already in force. By virtue of the authority thus conferred and of the duty thus enjoined, the treasurer received large sums in the form of old warrants, which were payable generally or out of the revenue of particular years in payment for licenses. Just how much this amounted to is difficult to say, but from the entries in the "Funds Accounts" book, it was probably more than four thousand dollars; warrants issued prior to the years in which they were so accepted.

In all the treasurer did, it seems quite clear, he acted with the knowledge and consent of the then city government. His reports were approved from time to time as presented. Many of the payments which are now challenged were specifically ordered by the council, and his final report was accepted and approved and he was ordered to turn over the insignificant balance in his hands to his successor in office, which was done.

It is unnecessary to refer in detail to the various items particularly named in the fourth count of the declaration, since what has been said will apply to each of them as well as all other alleged misappropriations of the city funds. It is not claimed that the treasurer retained any of the funds or that he converted any part of the same to his own use.

\*       \*       \*       \*       \*       \*       \*

It is argued by the plaintiff that the city council could not authorize or ratify an illegal use of the money; that the treasurer was charged with an independent function which he was bound to perform according to law, and that if he obeyed the ordinances or orders of the city council he did so at his peril. In other words, the council may by ordinance induce the treasurer to use and apply the funds in a particular way, and in the most formal manner approve such action, yet it may afterward sue and recover from the treasurer the amount so used if such use was in point of law unauthorized.

City of East St. Louis v. Flannigen.

The strength of this position depends somewhat upon the official character of the treasurer, and upon how far he is independent of the council, how far his power over the funds is limited by the authority of the council in that behalf and how far he is bound or permitted to disregard the directions of the council.

This is to be gathered from the facts as they appear in the record.

He was appointed by the council and gave the bond set out in the declaration.   The condition of the bond reads as follows :

" The condition of this obligation is such that, whereas, the above bounden Alexander Flannigen has been duly appointed treasurer of the city of East St. Louis, by the city council, at its meeting April 20, 1886.

" Now, if the said Alexander Flannigen shall well and truly perform the duties of said office and promptly account for and turn over to his successor, or other person designated to receive the same, all moneys, books, papers, property and valuables coming to his hands as such officer, as directed by the city council, then this obligation to be void, otherwise to remain in full force."

A question of construction is here presented—whether the words " as directed by the city council " apply to and qualify the whole condition, or merely the last clause.

There seems to be no more necessity for the phrase in respect to one clause than to another, and so the Appellate Court appear to have regarded it in the case of the City of East St. Louis v. Launtz, 20 Ill. App. 644.

That was an action against Launtz, the predecessor of defendant, brought in the name of the city, to recover for the use of the schools the one-half of the dram-shop license, which he had retained pursuant to the ordinance above referred to.

The treasurer set up as a defense that he had been expressly directed by said ordinance not to pay out any of said fund to the schools, and the court, in holding the defense valid, say that the condition of the bond, which was the same as

here, had not been broken, and that said "condition required the city treasurer to pay out the money in his hands, as such officer, as directed by the city council."

If this is the true construction, then the treasurer is to be regarded as the mere cashier of the city council, subject to its orders, having no independent official function, and of course protected by its orders to the extent, at least, that he is not to be called to account by the city for any act which it authorized.

And so he was regarded and treated in that case.

But a broader view may be taken of the subject. As wa said by the Supreme Court, in the case of the same plaintiff v. Renshaw, 153 Ill. 498, "The general rule is well settled that the penalty of an official bond can not be invoked where the plaintiff has done anything directly or indirectly to mislead the officer."

There the question was as to the effect of an order requiring the payment of the money in the hands of the retiring treasurer to his successor, in the face of a former order requiring it to be paid to another person. Although the suit was brought for the use of another, the city was regarded as the plaintiff, and was held to be estopped from complaining that the treasurer obeyed its final order. That the rule as to estoppel, above quoted, is well settled can not be doubted, but the question is whether it is applicable here where the effect is to bar an action by the city to recover money paid out upon old orders or warrants which it is assumed were drawn upon a particular fund or the revenue of a particular year, and can not be paid out of the revenues of another year unless there be a surplus.

It would seem too clear for argument that the city should not be heard to complain that in pursuance of its own ordinance the treasurer accepted warrants of former years for licenses. He should not be required to overrule their judgment as to whether such course could be safely pursued, nor should he be required to suffer if their action in that regard was unwise, irregular or illegal.

So, also, as to the ordinance by which the council assumed

City of East St. Louis v. Flannigen.

to treat the entire amount of dram-shop license money as a part of the common funds of the city and prohibited the payment of any of it to the schools.

As was said in the Launtz case, it protected him from the complaint of the school officers, who sought to recover the money from him. It should also protect him to the extent that the city is estopped as to him to say that it was not a part of the common funds, and as such, subject to the payment of warrants the same as though it had been derived from some other source.

It seems to be argued, however, or to be assumed in the argument, that because the payments in question were illegal as claimed, the city could not be estopped to deny their legality, and in this action recover the money from the treasurer who had followed their express directions, or been misled by their conduct in that regard, and, therefore, it is urged that the city may now proceed as though no directions had been given and no such action had occurred.

This because the city council is but a limited agency and without the power thus to bind or estop a subsequent council. The proposition as thus advanced, in its application to the case in hand, is hardly to be defended. It may be assumed that the council referred to was fairly chosen, and that it represented the views of a majority of the municipality at that time, but whether so or not, it was invested with full representative power as a council.

Another council afterward chosen should not be permitted to deny what it did, for the purpose of recovering money from those who acted according to its express direction or were misled by its official proceedings.

The warrants which were paid, the amount of which the city now seeks to recover, were presumably issued for something of value the city received, and it would seem to be a case of gross injustice and intolerable hardship to permit the city, after having enjoyed what was represented and acquired by such warrants, to recover the amount thereof under the circumstances here disclosed and upon the ground urged.

The constitutional provision referred to should be used as a shield to protect the tax payer and, indeed, the municipality, against the enforcement of a contract entered into in violation thereof, but it should not be used as a sword by the city with which to scourge those who have relied upon its ordinances and obeyed its orders in the management of its affairs.

The general rule, that no man shall take advantage of his own wrong, is the foundation of the principle of estoppel *in pais.* Where parties are equally at fault in bringing about an unlawful result, it is said that the condition of the defendant is the better, and in such case the law will decline to interfere. Here, if there was an unlawful application of the corporate money, the city was as much to blame as the treasurer, and upon principle should not be allowed to take advantage of its own wrong in order to enforce its demand against the treasurer, who was no more culpable than the council. If this view is correct, the treasurer may well insist that the whole of the dram-shop license money shall be regarded as a part of the general funds for the purposes of this case.

As to the item of the annual interest upon the bonds of the city, and the interest upon past due coupons, it may be said that the city did not appear to regard it as a part of the current expenses and drew no warrants on account thereof.

For all practical purposes, the attitude of the city was that of repudiation so far as these bonds were concerned.

If it so acted, why should it expect the treasurer to act otherwise, and with what reason can it ask the law to regard it otherwise?

The city treated the interest item as no part of the current expenses, and whatever the reason may have been, it can not object if the same treatment of the matter should obtain in this litigation.

The question of estoppel as presented by this record, upon the effect of the ordinances above referred to, was not before the Appellate Court when the case was there. As already suggested, that court had for consideration only the plead-

ings, and hence there seems to be nothing in its rulings to exclude the operation of estoppel in the case as it is now made up.

As has been said, the different results reached by counsel in their efforts to show that there was or was not a surplus, arise mainly from the different positions taken in regard to the one-half of the dram-shop license money and the interest on the city bonds, but this does not include all the matters in which counsel differ as to this branch of the case.    *    *

Recurring again to the principal feature of the case, it seems uncertain how many of the warrants, paid or unpaid, were so drawn as to their terms, or as to their dates with reference to taxes levied that they were valid anticipation warrants, and so of legal and practical value to the holders thereof, though what has been said assumed that all were so drawn.

But if so drawn, what further pecuniary interest has the city in that behalf, it being indebted beyond the limit; having merely exchanged the warrant for the thing received, and thereby having assigned so much of its revenue, but not being responsible for the payment of the warrant? If a warrant is not so drawn, can the city complain of the treasurer for not paying it, or, on the other hand, can the city be permitted to insist that the treasurer was bound to know it was wrongfully drawn, and recover from him if he did pay?

Must the treasurer know more than the city about its own affairs, and may the city hold him to account for not correcting its errors?

And in either case, can the city for its own use recover substantial damages for the supposed misapplication of the funds, even if it is not estopped to make the demand. As no direct argument has been made upon the point last suggested, it is not deemed necessary to do more than call attention to it and to some of the adjudications which may bear upon it. City of Springfield v. Edwards, 84 Ill. 626; Law v. The People, 87 Ill. 385; Fuller v. City of Chicago,

89 Ill. 282; Howell v. The City of Peoria, 90 Ill. 104; City of E. St. L. v. Flannigen, 26 App. 449.

On consideration of the whole case, the conclusion is that finding and judgment should be for defendants.

The judgment is affirmed.