[No. 3594.]

THE BOARD OF COUNTY COMMISSIONERS OF LA PLATA COUNTY v. HAMPSON.

1. COUNTY FUNDS—EXCESS WARRANTS.

County warrants issued in excess of the limit fixed by the constitution are void.

2. SAME—ANNUAL APPROPRIATION RESOLUTION.

By the act of 1891, the board of county commissioners is required by resolution to appropriate so much money available for the purpose as it may deem sufficient to defray all necessary expenses and liabilities of the county for the next year, specifying the objects and purposes for which such appropriations are made and the amount for each. The act prohibits the making of other appropriations, and the incurring of obligations for any object or purpose in excess of the amount appropriated therefor, but provides that "nothing herein contained shall prevent the board of county commissioners from ordering any improvement the necessity of which is caused by any casualty or unforeseen contingency." The board by its resolution entered pursuant to the requirements of the act made, among others, the following appropriations : "For county judge, witnesses and jurors, $600. For unforeseen contingencies, $5,000." The expenses of the county court exceeded the amount of the estimate. *Held* an unforeseen contingency arose for the discharge of which the $5,000 fund became available.

*Error to the County Court of La Plata County.*

ON THE tenth day of October, 1893, the board of county commissioners of La Plata county passed "The Annual Appropriation Resolution," for that county for the fiscal year 1894. By this resolution eighty per cent of the revenue to accrue from the annual tax levy, made at this same meeting of the board of county commissioners was appropriated and

set apart for certain specific purposes. Of this amount the sum of $25,000 was set aside " for ordinary county revenue, said amount to be paid out for the following objects and purposes, and for no other: * * * county judge, witnesses and jurors, $600; * * * for unforeseen contingencies, $5,000."

At the regular June, 1894, term of the county court of La Plata county, certain witnesses and jurors were in attendance, the *per diem* and mileage of which were admittedly proper charges against the county of La Plata, provided an appropriation had previously been made by the board of county commissioners therefor, the claim advanced by the county being, that when the certificates of these witnesses and jurors were presented at the regular July, 1894, meeting of the board of county commissioners, the special appropriation of $600 made for the county judge, witnesses and jurors for the year 1894 had been exhausted, and for this reason alone the county commissioners refused to allow the claim. The certificates of these witnesses and jurors having been duly assigned to Henry Hampson, defendant in error, he instituted this suit upon the same in the county court of La Plata county. A trial to the court resulted in a judgment for plaintiff. The defendant brings the cause here upon error.

Mr. ARTHUR CORNFOTH, for plaintiff in error.

Mr. N. C. MILLER and Mr. WILLIS A. REESE, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The claims in this case are admittedly just and valid claims against the county of La Plata for the *per diem* and mileage of witnesses and jurors attending the county court, the defense of the county being that the appropriation available for such purpose for the year 1894 had been exhausted prior to the presentation of these claims. This defense is based

upon an act entitled "An act to require the affairs of the counties of this state to be conducted from the revenues derived from taxation, and to prevent the expenses of any county from exceeding its revenues." Session Laws, 1891, p. 111.

The law of this state, both constitutional and statutory, shows an intent to establish the financial system of the state, counties and municipalities on a cash basis, or a system that should as nearly as possible approximate thereto. In furtherance of this plan, we find the most stringent provisions inserted in the constitution. It is a well known fact that state and county authorities, in violation of these express constitutional inhibitions, entered into contracts and incurred expenses largely in excess of the resources available in the discharge of the same. Warrants were issued upon these unconstitutional claims, which found purchasers in the money centers of the country. The total of such excess warrants issued by some of the counties of the state, with other indebtedness, in some instances was so large as to nearly equal the total assessed valuation of all property, both real and personal, in the county. The result has been a flood of litigation in the state and national courts, between such warrant owners and the payees named therein, extending over a long period of years. This litigation first reached this court in 1886, and soon thereafter reached the supreme court of the United States. As a result of this protracted litigation, the supremacy of the fundamental law has been universally upheld, and such excess warrants have been declared null and void. *The People v. May,* 9 Colo. 81, 404 ; *In re Appropriations,* 13 Colo. 316 ; *Henderson v. The People,* 17 Colo. 587 ; *Parks v. Soldiers' & Sailors' Home,* 22 Colo. 86 ; *Lake Co. v. Rollins,* 130 U. S. 662 ; *Lake Co. v. Graham,* 130 U. S. 676.

Notwithstanding the unanimity with which this result has been announced, and the strong and vigorous language employed by the courts, in denunciation of the illegal conduct of the public officers in respect thereto, the reckless extrav-

agance which had theretofore characterized the financial management of many of our governmental agencies, although checked in some measure, was not entirely stopped.

As a result of the illegal and excessive issuance of such warrants, investors in this class of paper have been heavy losers, on the one side, and the credit and good name of the state and the several counties have been lessened, on the other. The decisions of the courts were supplemented by legislation against the further issuance of such paper, to the end that the good name and credit of the state and of the municipalities therein might not be further jeopardized. At the time of the convening of the general assembly in biennial session, in 1891, the practice was still in vogue in some of the counties of issuing warrants far in excess of the revenues of such counties, and with no reasonable prospect of payment of such warrants. To put an end to this method of conducting the finances of the county, the act of 1891 under consideration, was passed.

This act designates what shall constitute the fiscal year of the counties, making the same identical with the calendar year. It requires the board of county commissioners of each county within the last quarter of each fiscal year, and at the time of making the annual tax levy, to pass a resolution, to be designated as " The Annual Appropriation Resolution," for the next fiscal year. By such resolution the board is required to appropriate such sum or sums of money as it shall deem necessary to defray all necessary expenses and liabilities of such county for the next fiscal year, specifying the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. It further provides that no other appropriation shall be made, and also that the total amount appropriated shall not exceed the probable amount of revenue that will be collected during the fiscal year.

By section 2 of the act, it is provided that neither the board of county commissioners nor any other officer shall add to the expenditures in any one year anything over and

above the amount provided for in the annual appropriation resolution, with the exception that "nothing herein contained shall prevent the board of county commissioners from ordering any improvement the necessity of which is caused by any casualty or unforeseen contingency," etc.

Section 3 of the act provides that no contract shall be made and no liability incurred unless an appropriation shall have been previously made therefor. By this section it is further provided that any officer who shall undertake to create any liability against the county in violation of the statute, shall be personally liable therefor, together with the sureties upon his official bond.

Section 4 extends the limit of taxation for certain purposes.

Section 5 provides the manner in which the several funds shall be kept by the county treasurer, and how warrants shall be drawn thereon.

Prior to the enactment of 1891 the commissioners were restricted in the rate of levy for ordinary county revenue, but by this act such restriction is entirely removed. This is in pursuance of the general scheme of the act to put the business of the counties upon a cash basis. Under the former system of issuing warrants which were sold to third parties, the taxpayers were kept in ignorance of the true state of the finances of their respective counties, while by requiring the levy of a tax in advance sufficient to meet all appropriations, the taxpayers are notified at an early date of any increase in the burdens of the county government, thus enabling them to promptly call to account public officials in case of unreasonable or unnecessary expenditures of the public funds.

This statute is couched in words which have a definite and positive meaning. It does not involve any absurdity, nor are parts of the act in contradiction with other parts thereof. The intent of the act, which is apparent, is concisely stated in the title, as "An act to require the affairs of the counties of this state to be conducted from the revenues derived from

taxation, and to prevent the expenses of any county from exceeding its revenues," and it must be accepted and enforced as it reads, as the courts have no right to add to or take from its plain and positive provisions. *Lake Co. v. Rollins, supra.*

The history of the litigation of this state, abounding, as we have seen, in controversies over excess warrants, demonstrates the wisdom of the legislature in passing this act, and emphasizes the duty of the courts to give force and effect to its plain provisions, to the end that the intent of the lawmaking power may be carried into effect. The limitation imposed is sufficiently broad in its scope and definite in its terms, to restrict the power of the counties to contract indebtedness and issue warrants for witnesses', jurors' fees, etc. *Lake Co. v. Rollins, supra.* We, therefore, conclude that unless by the annual appropriation made by the board of county commissioners of La Plata county for the year 1894, provision is to be found for the payment of the claims here in controversy, the same cannot be paid, and that no judgment should have been rendered against the county therefor.

The result reached by the court of appeals, in the recent case of *The Leadville Illuminating Gas Co. v. The City of Leadville*, 9 Colo. Court of Appeals Reports, 400, is not inconsistent with the views herein expressed, for in that case the claim upheld was one excepted out of the operation of the restrictive provisions of the act, as is conclusively demonstrated in the very able opinion of Judge Wilson. The claims before us do not fall within any exception, and must, therefore, be determined by the general rule applicable in such cases.

In this case, however, it is not claimed that the revenues of La Plata county were not amply sufficient to meet all the expenses for the fiscal year 1894. In fact, the record shows that such revenues were not only sufficient for this purpose, but largely in excess thereof, and hence, if the defense of the county was good at the time presented, it would, nevertheless, have been the duty of the county authorities to have made

provision for these claims at the earliest possible moment, when they could legally have made an appropriation therefor, to wit: at the time of making the next annual appropriation. Although events occurring subsequent to the time of making the appropriation of October, 1893, demonstrated the inadequacy of the amount appropriated to meet the salary of the county judge, and the *per diem* and mileage of witnesses and jurors, properly chargeable to the county, in deference to well established principles, we must assume that the county commissioners, in limiting the appropriations for such purposes as they did, acted in good faith, and appropriated such sum as in the opinion of the board would be sufficient to meet the burdens cast by law upon the county in this respect. The number and length of criminal trials, and the consequent expense of the same cannot be definitely determined in advance. These matters depend upon contingencies that cannot be foreseen, and definitely provided for. The commissioners, having additional revenue at their disposal, and realizing the uncertainties of this and other items of expense, in the exercise of a wise discretion in the premises, did not stop with appropriating definite sums for specific purposes, but, also, appropriated a gross sum of $5,000 for unforeseen contingencies. When the expenses of the county court exceeded the amount of the estimate of the board of commissioners, there arose a contingency unforeseen for the discharge of which the $5,000 fund became immediately available.

It is not claimed that this appropriation had been exhausted at the time of the presentation of these claims, nor that there was not enough remaining in this fund to have paid all the demands upon it in full. In this state of the record, the defense of the county was not made out, the judgment was, therefore, properly entered for the plaintiff. The judgment will, accordingly, be affirmed.

*Affirmed.*