[No. 3807.]

## Mugrage et al. v. The People.

County Commissioners—*Proceedings—Record.* A record is not always required to render the procedings of the Board of County Commissioners binding. (29)

And where question arises as to their action a liberal discretion should be exercised in receiving evidence of the attending circumstances, to aid in ascertaining the real purpose of what is set down. (27)

The statute (Rev. Stat., secs. 1215, 1216) provides that the Board of County Commissioners shall at the time of the annual levy of taxes pass a resolution which shall appropriate such sum or sums as may be deemed necessary to defray all expenses and liabilities for the next. fiscal year, and specify the objects and purposes for which appropriations are made, and the amount appropriated for each purpose; that no further appropriation shall be made at any other time within such fiscal year; and that neither the board nor any officer of the county shall add to the county expenditures anything over and above the amount provided for by such resolution.

The only resolution of the board which could be termed an appropriation, directed levies upon the taxable property, etc., as follows: "For State Purposes, 4 mills; for County Redemption Fund, 5 mills; for County General Revenue, 10 mills; for Road Fund, 4 mills; for General School Fund, 4 mills—the same to be extended on the tax roll by the county assessor, and by him certified to the county treasurer for collection." *Held* that warrants regularly issued for unquestioned obligations of the county, and paid by the treasurer were to be credited to him in his account, in spite of the absence of any formal appropriation resolution, such as required by the statute; that the treasurer was not to be penalized for the omissions of the governing body of the county. (29-32)

*Appeal from Grand County District Court.* Hon. Charles McCall, Judge.

Mr. W. F. Robinson, Mr. P. J. E. Robinson, Mr. David P. Howard and Mr. Ralph W. McCrillis, for appellants.

Mr. B. C. Hilliard and Mr. J. R. Allphin for appellees.

Bell, J.

This action is founded on an alleged breach of a County Treasurer's bond erroneously executed to the County of Grand as obligee, instead of to The People of the State of Colorado, as the statute provides. The condition of the bond was in substance, as provided by the statute, for the faithful perform-

ance by James C. Mugrage, bounden treasurer, of the duties of his office, and for the payment of all moneys that might come into his hands as such treasurer, and for the delivery of all the books, records, papers and other things belonging to said office or to said County of Grand, to his successor in office. It is admitted by the appellees and by the trial judge, who directed the jury to return a verdict against the appellants for the sum of $2,093.42, that the appellant treasurer acted honestly, paid out nothing except upon warrants duly issued by the board of county commissioners for primary and necessary obligations of the county, barring the holding of the judge that there was not a valid appropriation resolution passed by the board of county commissioners during the last quarter of the fiscal year ending December 31st, 1908. It is contended by the appellants that, for the fiscal year 1909, the board of county commissioners passed a resolution in all essential particulars the same as had been passed and acted under for the 13 fiscal years previous thereto, and the chairman of the board acting at the time the said resolution was passed was produced for the purpose of showing what was said and done, the attending circumstances, and that it was the intention of the board in passing the resolution for the tax levy, November 9th, 1908, to make the same not only a levy, but also an appropriation of the amounts that would be collected thereunder. The court denied the offer, and would allow nothing to be given in evidence in explanation of the resolution, and held that the resolution standing alone was insufficient to constitute an appropriation for the fiscal year 1909. We think this ruling of the court is reversible error. This is an action brought solely for the purpose of penalizing the appellant treasurer for honestly paying warrants, on the order of the board of county commissioners, for the primary obligations of conducting the government of the county. A most liberal discretion should have been exercised by the trial court in permitting the attending circumstances to go to the jury, with the resolution, so that it might aid them in determining the true intention and pur-

pose of the commissioners in passing the resolution. For aught we know, much may have been done by the board that was not included in the record of its proceedings. It does not always require an actual record of all a board of commissioners may do to make the same binding: *Georgetown & Silver Plume Road Co. v. Hutchinson,* 4 Colo. 50.

A former Court of Appeals, in considering a like question in *Beshoar v. County Commissioners of Las Animas County,* 7 Colo. App. 444-452, 43 Pac. 912, found that the wording of the resolution provided for no specific appropriation for general county purposes, but said the court should take into account the fact that the boards were made up often of men not accustomed to legal forms or usages of legislative bodies, and who could hardly be expected to use the accuracy and precision which characterizes the work of trained persons in such work. The court held that no precise form need be used in order to make the resolution effective within the terms of the legislative act, and further said that, by looking to the list alone, it did not find in terms an appropriation for ordinary county purposes; that the phraseology adopted by the board was unhappy, and inexact, in that it said "for ordinary county revenue, 6 mills," and that, taken by itself, it would look as though the object and purpose of the resolution was simply the settlement of the levy which should be made, and a statement of the probable amount to be derived from that size and description. It inferred, however, that from the attending circumstances as indicated in the resolution generally, such as making appropriations for other purposes, and it being the duty of the board to make the levy and appropriation at the same time, it must have been the intention of the board to make an appropriation for "general county purposes."

The recorded resolution of levy for the fiscal year 1909, which is claimed to have been intended also as an appropriation, reads in part as follows:

"Upon motion the following levies on taxable property in Grand County were ordered for the year 1908, the same to

be extended on the tax roll by the County Assessor and by him certified to the County Treasurer for collection. For state purposes, 4 mills; for county redemption fund, 5 mills; for county general revenue, 10 mills; for road fund, 4 mills; for general school fund, 4 mills; military poll, $1.00." (Then follow the amounts for the different school districts.)

This resolution was passed November 9th, 1908. The words of the resolution provide for a formal levy of 10 mills on all the taxable property of the county, for county general revenue. The resolution did not stop with the ordinary words for making a levy of specific sums on all the taxable property of the county for specific purposes, but added thereto "the same to be extended on the tax roll by the County Assessor and by him certified to the County Treasurer for collection." The appellant treasurer operated under the same form of resolution in 1908, and seems to have had no difficulty in accomplishing the purposes of the statute thereunder. When he made a collection, he divided it according to the levy and put it in the respective funds, exactly as he would have done if the resolution had stated that there was *levied and appropriated* the specific amounts that were intended to be realized by the levy. In March, after the close of the appellant treasurer's term, the board had Mr. Morton M. Hamma, a certified public accountant, examine his books of account, and he failed to find any substantial error therein. At the end of the fiscal year, December 31st, 1908, his books were in a commendable condition, with every fund solvent, and there was something like $5,000.00 in the treasury, revenues collected during 1908. The board, at its meeting in January, 1909, allowed the bills for the last quarter of 1908 and, it would seem, the salaries for the last 12 days of the terms of the county officers whose terms were about to expire. The board also issued warrants for these bills amounting to $2,093.42 which the appellant treasurer promptly paid, cancelled and delivered to his successor in office, who accepted the same, together with all other property of the county then in his hands, including a treas-

urer's check for $3,065.93, the balance of the county fund of
the fiscal year 1908.  Subsequent to this settlement, the suc-
ceeding treasurer concluded he had discovered that no appro-
priation had been made by the board during the last quarter
of the fiscal year 1908, and notified the board then acting that
he would not pay out another dollar until an appropriation for
the fiscal year 1909 was made.  On April 7th, 1909, the board
met and seemingly endeavored to pass a *nunc pro tunc* appro-
priation resolution for the fiscal year 1909 which reads as fol-
lows:

"Motion duly made that the annual appropriation be
made at this time for the ensuing fiscal year of 1909 on ac-
count of no appropriation having been made by the former
board of county commissioners.  *  *  *  Upon motion the
following amounts were appropriated to the several county
funds:  County general revenue fund, $8,519; pay general
county expenses, special contingent fund, $1,278; road fund,
$3,407."

The levies made in 1908 of 5 mills for county redemption,
4 mills for general school fund, and $1.00 for military poll
tax, if attempted to be appropriated at all in the above stated
resolution, were not appropriated in the name of the funds
for which the levies were made.  However, the trial judge
declared such *nunc pro tunc* resolution void, first, because it
was not timely, or made during the last quarter of the fiscal
year 1908.  We think the trial court was misled in its ruling
by an *obiter* appearing in the opinion in *La Plata County v.
Hampson,* 24 Colo. 127-132, 48 Pac. 1101, to the effect that,
where an appropriation was once made for general county
expenses, and that fund became exhausted, and other obliga-
tions of the county were made, it became the duty of the
county authorities "to have made provision for these claims
at the earliest possible moment, when they could legally have
made an appropriation therefor, to-wit: at the time of making
the next annual appropriation."  If any such narrow construc-
tion of the statute as was given it by the trial court in its ruling

upon the *nunc pro tunc* resolution should be approved in a case where there was not, in fact, any appropriation made, then the very existence of the county governments might be at he mercy of the ignorance, inadvertence or bad faith of the boards themselves.

However, we do not hold that it was absolutely necessary for the trial court to have held that there was a sufficient appropriation made by the board in the last quarter of 1908 in order for it to have found "some legal excuse which would free the defendant Mugrage and his bondsmen from liability on account of the things charged in plaintiff's petition," and relieve them of the penalty which it admits is unjust. Such a finding by the trial court in order to accomplish the purpose it desired was unnecessary in this case, wherein it was developed that the resolution was acted under, and the purpose of the statute fully accomplished. It would seem that, after a defective resolution has become *functus officio,* unless some real substantial damage has resulted through the omissions of the board to literally comply with the law, a sound public policy and the laws of estoppel should be a bar to an action by the board of county commissioners to impose a penalty upon a county treasurer, for paying warrants drawn and directed to be paid by it for the necessary expenses of the county.

There is not a syllable or line of testimony in the record before us that indicates in the slightest degree that the County of Grand or any citizen of said county, in any particular, suffered any injury from any omission of duty of the appellant treasurer, and, upon the other hand, the evidence conclusively shows that said treasurer was an exemplary official and that he, in conjunction with the board of county commissioners acting with him, paid every honest debt of the county during their administration, from the current revenues of the county, and turned over to their successors in office a large surplus, including every dollar that came into their hands which had not been honestly paid out on good faith obligations of the county.

The title of the statute, Session Laws of 1891, p. 111, under which appropriation resolutions are required to be made, reads as follows:

"An act to require the affairs of the counties of this state to be conducted from the revenues derived from taxation, and to prevent the expenses of any county from exceeding its revenues."

In *La Plata County v. Hampson, supra,* it is shown that the board of county commissioners in October, 1893, appropriated the sum of $25,000 for ordinary county revenue, "said amount to be paid out for the following objects and purposes, and for no other: * * * county judge, witnesses and jurors, $600; * * * for unforseen contingencies, $5,000." At the June, 1894, term of the County Court, certain witnesses and jurors were in attendance, the *per diem* and mileage of which were admittedly proper charges against the county, provided there had been a proper appropriation therefor. When the certificates of the witnesses and jurors were presented to the board, the special appropriation of $600 had been exhausted, and the board refused to allow the claims. They were assigned to Hampson, who brought action thereon, and he recovered for the amount of the certificates. Upon a writ of error, the Supreme Sourt held that the title of the Act of 1891, as above set forth, concisely states the intent of the act and that it must be accepted and enforced as it reads. The court stated that the revenues of the county were not only sufficient to pay the obligations of that year, but largely in excess thereof, and hence, "if the defense of the county was good at the time presented, it would, nevertheless, have been the duty of the county authorities to have made provision for these claims at the earliest possible moment, when they could legally have made an appropriation therefor, to-wit: at the time of making the next annual appropriation," and the judgment of the trial court was affirmed.

Now, let us contrast the conditions of the instant case with those prevailing in the *Hampson* case, *supra,*

It is admitted in the instant case that the payment of the $2,096.42 complained of was made for the primary and necessary expenses of conducting the government of the county, and upon warrants issued by the board of county commissioners which were cancelled when paid and delivered to the succeeding treasurer. We may logically say, in the very language of the Supreme Court in the *Hampson* case, that "the record shows that such revenues were not only sufficient for this purpose, but largely in excess thereof, and hence, if the defense of the county was good at the time presented, it would, nevertheless, have been the duty of the county authorities to have made provision for these claims at the earliest possible moment." In the *Hampson* case, the board of county commissioners had not even issued warrants for the claims in question, but Hampson sued on the certificates of the county court clerk, and recovered judgment in the trial court, and, if the Supreme Court had descended to a narrow construction of the statute, it would have reversed the judgment and required the exact formality to be observed. However, it adopted the broad judicial spirit and said, if the revenues were not sufficient at the time, the law required the board at the first opportunity to have provided for the payment of the claims sued on, and promptly affirmed the judgment requiring the payment thereof.

In the last named case and likewise in the *Beshoar* case, *supra,* the claims sued on were neither approved by the commissioners, nor were any warrants issued therefor, nevertheless, the appellate court in both cases peremptorily brushed aside all quibbles and technicalities, and required the counties to pay their honest debts out of the current revenues of the current year. How much stronger is the instant case? Here the bills were regularly presented for unquestioned obligations of the county, warrants were properly issued and duly paid out of the current revenues, and substantial justice was done as between the county and its creditors. If the county and the appellant treasurer had stood upon some informalities, and

had refused to liquidate the admitted indebtedness of $2,096.42, then it would have been the imperative duty of the succeeding board, at the earliest opportunity, not only to have provided for, but to have paid these claims. It would seem like consuming the time of the courts in senseless quibbles, after substantial justice has been done, however crude the methods pursued may have been, for this court to sanction the setting aside the substance of things properly settled for the mere sake of formal inaccuracies in reaching proper results. It never was the purpose of these drastic statutes that they should be used by one set of officials in penalizing their predecessors for some technical omission to observe prescribed forms in reaching results demanded by these statutes. No honest citizen of Grand County could desire that this exemplary officer, after so efficiently conducting the duties of his office that not a dollar could be found which was not applied on a good faith debt of the county, or timely turned over to his successor in office, should pay from his personal effects the primary and necessary expenses of conducting the government of the county for the last quarter of the year 1908.

The board of county commissioners of Las Animas County, in the *Beshoar* case, contracted for the printing of the delinquent tax list, and, after the same had been published at an expense of $2,139.15, the board refused to either pay or allow the bill in whole or part, because, it was said, that the board in the preceding year failed to make an appropriation to the general county fund, as provided in said Act of 1891. The trial court sustained the action of the board through a narrow construction of the statute. However, the Court of Appeals swept aside all narrow and technical dogmas of construction, and intimated that, if it were necessary, it might be inclined to hold that the defense of *ultra vires* was not open to the county where the contract had been performed, and the county had received and accepted the benefits and results, and said, as a general proposition, such practices

do not accord with that spirit of commercial honesty which ordinarily characterizes governing bodies.

It is also difficult to see how this executive officer, the appellant treasurer, can be penalized for the omissions of the governing body of the county in failing to pass a technical, formal appropriation resolution. It would seem that the warrants of the board ought to protect him. In *Beeney v. Irwin*, 6 Colo. App. 66-72, 39 Pac. 900, wherein it was sought to hold the county treasurer responsible for the errors of the Board of County Commissioners, the Court said, in part quoting from *County Commissioners v. Lee*, 3 Colo. App. 177, 32 Pac. 841:

" 'Wherever a broad, universal and sweeping power is thus given to a governing body, it cannot be conceded that by implication any other body, whether it be a court or one resembling the Board of County Commissioners, should likewise have power to dispose of the public revenues." We cannot perceive that the treasurer is clothed with the power to pass on the legality of the action of the governing body of the county. Power to determine the validity of all claims against the governmental division is intrusted to the board. When they have audited and allowed a claim, and a warrant is issued in accordance with their determination, we cannot see that the statute has clothed the treasurer with the supervisory power to determine the validity of their acts."

Counsel for appellees herein seem to have understood that it was necessary to show that the treasurer had actual knowledge of the failure of the board to pass the proper resolution before he could be held responsible, and, therefore, the treasurer was charged in the complaint with actual knowledge of such omission; but that allegation was not sustained in the proof.

In the *City of East St. Louis v. Flannigan, et al.*, 69 Ill. App. 167-172-3, the court quoted with approval from the *same plaintiff v. Renshaw*, 153 Ill. 498, 38 N. E. 1048, as follows:

"The general rule is well settled that the penalty of an official bond cannot be invoked where the plaintiff has done anything directly or indirectly to mislead the officer," and continuing the court said:

"That the rule as to estoppel, above quoted, is well settled cannot be doubted, but the question is whether it is applicable here where the effect is to bar an action by the city to recover money paid out upon old orders or warrants which it is assumed were drawn upon a particular fund or the revenue of a particular year, and can not be paid out of the revenues of another year unless there be a surplus.

"It would seem too clear for argument that the city should not be heard to complain that in pursuance of its own ordinance the treasurer accepted warrants of former years for licenses. He should not be required to overrule their judgment as to whether such course could be safely pursued, nor should he be required to suffer if their action in that regard was unwise, irregular or illegal.

"*      *      *      *      *      *      *      *

"It seems to be argued, however, or to be assumed in the argument, that because the payments in question were illegal as claimed, the city could not be estopped to deny their legality, and in this action recover the money from the treasurer who had followed their express directions, or been misled by their conduct in that regard, and, therefore, it is urged that the city may now proceed as though no direction had been given and no such action had occurred.

"This because the city council is but a limited agency and without the power thus to bind or estop a subsequent council. The proposition as thus advanced, in its application to the case in hand, is hardly to be defended. It may be assumed that the council referred to was fairly chosen, and that it represented the views of a majority of the municipality at that time, but whether so or not, it was invested with full representative power as a council.

"Another council afterward chosen should not be permitted to deny what it did, for the purpose of recovering money from those who acted according to its express direction or were misled by its official proceedings.

"The warrants which were paid, the amount of which the city now seeks to recover, were presumably issued for something of value the city received, and it would seem to be a case of gross injustice and intolerable hardship to permit the city, after having enjoyed what was represented and acquired by such warrants, to recover the amount thereof under the circumstances here disclosed and upon the ground urged."

The reasonings of the Illinois courts are pertinent to the facts before us. By examining the record, it will be seen that the appropriation resolutions passed by the succeeding board were very crude in form and incomplete, and, if the several rulings thereon by the trial court should be affirmed by this court, and we should follow the harsh rules invoked by the appellees in this case, it would render the succeeding board and treasurer personally liable for all the expenses they paid out in maintaining the county government during the year 1909. The succeeding treasurer, who insisted upon repudiating what was done under the defective resolution, admits that he paid out a large check on one of the arbitrary divisions of the county general fund; that he accepted one of these same warrants on taxes due, and paid out several smaller warrants before the April appropriation was passed. If the narrow, harsh construction here invoked could be applied to the actions of the officers of Grand County for the past 15 years, it would probably shift the burden of all the expenses from the taxpayers of the county to the bonded officials and their sureties; and we know of none more to be injured by the strict construction than the appellees themselves.

While the trial court based its judgment upon the ground of a lack of an appropriation resolution, nevertheless, counsel strenuously urge that there were no moneys in the county general fund when these warrants were paid, or at least not

to exceed the sum of $505.64, and seem to desire to penalize this officer, if not for the defective resolution, at least for the payments from the alleged depleted fund.

The evidence shows clearly that, at the end of the fiscal year, December 31st, 1908, with all arbitrary divisions of the county general fund properly transferred, all the respective funds of the county would have been solvent, leaving in the treasury funds collected for the fiscal year 1908 to the amount of about $5,000. The warrants issued for the sum of $2,096.42 were for bills allowed by the board of county commissioners at its January, 1909, meeting, after the close of the 1908 fiscal year, and included the salaries of the county officers for the last 12 days of their terms extending into 1909. We do not know what formal arrangements the board and the treasurer made through transposition of funds or otherwise for the paying of these bills after the close of the fiscal year, but it is certain that they were paid out of the revenues of 1908, fully carrying out the purpose of the statute requiring the obligations of each fiscal year to be paid from the current revenues. It was held in the state of Kentucky that, when the object to be attained by a levy and appropriation for a given fiscal year has been accomplished, and a surplus remains, it must be treated as a part of the general funds of the county and available for general county purposes. *Field v. Stroube, etc.,* 103 Ky. 114-116, 44 S. W. 363.

Whether the same rule may or may not apply in this jurisdiction, where the governing body of the county has allowed the obligations of the fiscal year, issued warrants upon the treasurer for their payment, and the same have been paid out of the current revenues of the current fiscal year, we need not decide. In this case the controlling purposes of the statute are accomplished, and the court will not search for an opportunity to penalize the officers for any minor omission of duty. There is no statute in this state that specifically authorizes a board of county commissioners to institute a suit to enforce such a penalty. We do not say that there might not be cases

wherein the county commissioners might maintain a suit for injuries threatened or suffered by treasurers paying from depleted funds, but there is nothing in this record that would justify this court in considering the enforcement of any penalty therefor.

Under the facts before us, it is our judgment that neither the law nor a sound public policy sanctions the prosecution or maintenance of this suit by the appellees, and the judgment of the trial court should be, and is hereby, reversed, and the case remanded with directions that the same be dismissed.

*Reversed.*

Decided April 13, A. D. 1914. Rehearing denied June 8, A. D. 1914.