## No. 8677.

COUNTY COMMISSIONERS OF ARAPAHOE COUNTY ET AL. v.
UNION PACIFIC RAILROAD COMPANY ET AL.

1. STATUTES—*Construction.* Statutes prescribing the manner, form and time within which public officers shall discharge the public functions are regarded as directory, unless a different intent appears. *Held,* in view of the provisions of the act of 1893 (Rev. Stat, sec. 1375) that the act of 1891 (Rev. Stat., sec. 1216) must be held directory.

2. *Construed.* A statute provided that the county commissioners of any county "which has or shall have" outstanding warrants, for the payment of which there are no funds in the treasury, shall, at the time of the annual tax levy, levy a sufficient tax, not exceeding, etc., for the redemption of all such unpaid warrants. (Rev. Stat., sec. 1375). *Held* to authorize a levy for warrants issued subsequent to, as well as before, the enactment of the statute.

3. TAXATION—*County Purposes—Power of County Commissioners.* Sec. 1 of chapter 54 of the laws of 1893 (Rev. Stat., sec. 1375) was enacted because it was found impossible to comply strictly with the provisions of the act of 1891 (Rev. Stat., sec. 1216), in all counties and at all times. In 1913, the commissioners of Arapahoe County levied a tax for the payment of certain outstanding warrants which had been issued in previous years, in excess of the annual appropriations, but in good faith, partly for materials furnished, and labor performed, for the necessary repair of damages occasioned to the roads and bridges of the county, by unprecedented floods, and partly by errors in judgment of the county board, and its inability to anticipate the exact amounts necessary to accomplish the purpose for which certain funds were created. *Held* that the levy was a lawful exercise of the authority granted by the statute.

Judgment for the plaintiff in an action to recover a tax, reversed.

White, C. J. and Bailey, J. concurred, but upon the ground that the action being in equity to restrain the disbursement of the tax by the county authorities, and this relief having been properly denied, the right to recover the tax being a mere incident to the equitable relief demanded, fell with it.

*Error to Arapahoe District Court, Hon. John A. Perry,*

*Judge.*

Mr. WALTER M. MORGAN and Mr. THOMAS E. WATTERS, for plaintiffs in error.

Mr. C. C. DORSEY, Mr. E. I. THAYER, Mr. WILLIAM B. KING, Mr. E. E. WHITTED, Mr. E. N. CLARK, Mr. H. T. ROGERS, for defendants in error.

Mr. Justice Allen delivered the opinion of the court:

DURING the last quarter of 1913 the Board of County Commissioners of Arapahoe County included in its annual appropriation bill, and among its several levies, the following:

"For 'Special Fund' for liquidation, payment and redemption of all registered warrants, and all orders and claims against all funds prior to the fiscal year 1913, 1.7 mills on each dollar of assessed valuation. $27,710.00."

This special levy was made for the purpose of paying certain excess warrants which were issued in 1912 and January, 1913, upon certain funds created in 1911, for the fiscal year 1912, and which excess warrants were registered after the respective funds upon which they were drawn had become exhausted.

Taxes were collected under this special levy, and by the plaintiffs below were paid under protest.

This action was brought by the plaintiffs below, for several railroad companies, as taxpayers in their own behalf and in behalf of other taxpayers similarly situated, against Arapahoe County and its treasurer. The chief purposes of the action were: (1) to prevent the disbursement of the money paid by the plaintiffs under such special levy; (2) to have the said special levy, and the alleged excess warrants declared null and void; and (3) to obtain judgment for repayment of taxes paid under said levy.

The trial court denied the injunctive relief sought, but held the special levy, and the appropriation of the fund raised thereby, invalid, and ordered the return to plaintiffs of the taxes they had paid under said special levy.

According to the findings of fact of the trial court, it

was shown upon the trial of this cause that the alleged ex-
cess warrants were issued in good faith, in proper amounts
respectively, in payment for materials furnished, and
necessary to be furnished, and for labor and service done
and performed, and necessary to be done and performed,
for the county.

The court further found that in the case of the road
and bridge fund the expenditures, or issuance of excess
warrants was due to the great and unusual and practically
unprecedented floods of the year 1912, which could not
have been anticipated, and in the case of other funds the
difference between the amount appropriated, and the
amount of the warrants, was due to errors of judgment
upon the part of the county board, and to its inability to
anticipate the exact amounts which would be necessary to
accomplish the purpose for which such funds were created
by the appropriation made in 1911.

The special levy in question was, or could have been,
made pursuant to chapter 54 of the Session Laws of 1893,
particularly section 1 thereof, the same being section 1321,
Mills Ann. Sts., 1912, and section 1375, R. S. 1908, read-
ing as follows:

"It shall be the duty of the board of county commission-
ers of any county of this state which has, or shall have,
any unliquidated and unpaid county warrants or orders,
drawn on any fund, for the payment of which there are
no funds in the county treasury of such county, and to pay
which the incoming taxes already levied are insufficient,
at the same time other county taxes are annually levied
for the current year, in addition to the other taxes pro-
vided by law, to levy a sufficient tax, not exceeding five
mills on the dollar of assessed property, as shown by the
assessment roll of such county of the current year, for the
purpose of creating a 'Special Fund' for the liquidation,
payment and redemption of all such unliquidated and un-
paid warrants or orders. A like levy shall be so made at
such times, annually, until all of such unliquidated and
unpaid warrants or orders shall be fully liquidated, paid

and redeemed, principal and interest, as provided in this act."

Counsel for defendants in error, plaintiffs below, insist that the excess warrants in question, issued after the funds on which they were respectively drawn had been exhausted, are invalid because of the provisions of section 2 of the Act of 1891, being section 1330, Mills Ann. Sts., 1912, section 1216, R. S. 1908, as follows:

"Neither the board of county commissioners, nor any officer of the county, shall add to the county expenditures in any one year anything over, and above the amount provided for in the annual appropriation of that year, except as herein otherwise specially provided. And no expenditure for improvements to be paid for out of any fund of the county shall exceed in any one year the amount provided for such improvements or purposes in the annual appropriation resolution; *Provided,* however, that nothing herein contained shall prevent the board of county commissioners from ordering any improvement, the necessity for which is caused by any casualty or unforseen contingency happening after such appropriation is made, if there shall be money in the county treasury belonging to the proper fund out of which payment for such improvement can be made."

Statutes prescribing the manner, form and time within which public officers are required to discharge the public functions are regarded as directory, unless there is something in the statute which shows a different intent. *People v. Earl,* 42 Colo. 238, 248, 94 Pac. 294. Where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, the provision may generally be regarded as directory. 36 *Cyc.* 1158.

The purpose of the Act of 1891, hereinbefore quoted, may be, as was stated in *Beshoar v. Las Animas County,* 7 Colo. App. 444, 448, 43 Pac. 912, to compel antecedent determination of the exact amount which should be used for the general purposes of the county as well as the sums which might be applied to other purposes, and to compel

the county commissioners to consider and decide with great care the levy which should be made, and the objects to which the moneys might be realized from it should be put. But the fact also remains, as was stated by this court in *Bent County v. Santa Fe Ry. Co.*, 52 Colo. 609, 617, 125 Pac. 528, 530, as follows:

"However desirable it may be that the affairs of the several counties be conducted on a cash basis, from the revenues derived each year from taxation, it is a matter of common knowledge that to do so is practically impossible, and the general assembly has frequently recognized this fact and made provision therefor."

One of such provisions which may reasonably be deemed to be referred to in the above quotation from the *Bent County* case, in the Act of 1893, hereinbefore quoted, and under which the special levy in question might have been made.

If the Act of 1891 were at all times strictly complied with it is very likely that no occasion would ever arise for acting under the provision of the Act of 1893 quoted.

The Act of 1893 was evidently enacted because it is practically impossible to comply strictly with the requirements of the Act of 1891, in all counties, at all times. Therefore section 2 of the Act of 1891, hereinbefore quoted, so far as the same applies to such expenditures as are represented by the excess warrants in this case, should be held directory, in view of the foregoing circumstances, and in view of the further fact that nowhere in the Act of 1891 is it provided that warrants issued or indebtedness incurred in violation of the provisions of section 2 thereof shall be void, or the county absolved from all liability thereon. This court has intimated in the case of *La Plata County v. Hampson*, 24 Colo. 127, 132, 48 Pac. 1101, 1103, that such warrants and indebtedness may be binding upon the county. In that case the defense of the county, in a suit upon claims, was, that the appropriation available for the year had been exhausted prior to the presentation of the claims. The court said

"If the defense of the county was good at the time presented, it would, nevertheless, have been the duty of the county authorities to have made provision for these claims at the earliest possible moment, when they could legally have made an appropriation therefor, to-wit, at the time of making the next annual appropriation."

Defendants in error contend that the Act of 1893 was intended only to provide for a special levy for the redemption of warrants theretofore issued, and excess warrants outstanding at the time of the passage of the Act. But, as was said in the *Bent County* case, "the act contains expressions that might include indebtedness subsequently incurred." The act provides that a special levy shall be made in those counties that have, "or shall have, any unliquidated and unpaid county warrants or orders drawn on any fund," etc. This clearly shows that the act was intended to cover and provide for warrants that might be issued after the date of the passage of the act, as well as warrants theretofore issued.

The Act of 1891 had been tried and tested. It had become a matter of common knowledge that to place and keep the financial affairs of a county upon a cash basis, in strict compliance with the statute of 1891, was practically impossible; that county officials in an effort to discharge all of their public duties pursuant to this and other provisions of the law enjoined upon them, on account of contingencies arising that were unforseen, and could not be anticipated at the time of making and providing the annual appropriations, had been obligated from time to time to incur necessary indebtedness in excess of the appropriations and issue warrants therefor; that many such warrants in some counties were outstanding after the exhaustion of the funds on which they were drawn; and that evidently more, under like circumstances, would be issued in the future, and if not redeemed would tend to leave *bona fide* claims unpaid, and also tend to impair the financial credit of the county.

The legislature evidently recognized this situation, and

as a matter of public policy passed the statute of 1893, hereinbefore quoted, intending thereby to afford relief and to allow the county board to make a special levy for the purpose of creating a fund to redeem all such outstanding warrants, whether such had been, or in the future would be issued under like circumstances. The wording of the act, as hereinbefore pointed out, sustains this view of the meaning and the purpose of the statute.

The special levy and the taxes collected thereunder were valid, and it therefore follows that the trial court was right in refusing the injunction prayed for by plaintiffs below, but was in error in rendering judgment for the plaintiffs for the repayment of the taxes paid under the special levy. The judgment is reversed, the cause remanded, and the court directed to dismiss the complaint.

Decision *En Banc.*

Reversed.

Mr. Chief Justice White and Mr. Justice Bailey specially concurring.

Chief Justice White concurring:

I agree that the judgment should be reversed, but not upon the grounds stated in Mr. Justice Allen's opinion. In fact, I dissent from the construction placed upon the statutes therein discussed, and think he has erred in stating the facts of the case.

The undisputed record is that the warrants issued in 1912 and January, 1913, for the payment of which the special levy in question was made, were issued after the fund upon which they were drawn was entirely exhausted, and were not issued "upon certain funds created in 1911 for the fiscal year 1912." Moreover, the entire taxes to create such fund had been collected and paid out prior to the issue of such warrants, or the contracting of the indebtedness for the payment of which they were issued. The Act of 1891, §§ 1215, 1216 and 1217, R. S. 1908, prohibits adding to the county expenditure in any one year anything above the annual appropriation therefor, except that the board of county commissioners are permitted to order

"any improvement, the necessity of which is caused by any casualty or unforeseen contingency happening after such annual appropriation is made, *if there shall be money in the county treasury belonging to the proper fund out of which payment for such improvement can be made.*" Section 1217, *supra*, declares that no contract shall be made by the board of county commissioners, and no liability against the county created by any officer of the county, whether the object of the expenditure shall have been ordered by the board of county commissioners or not, unless an appropriation shall have been previously made concerning such expense, and makes every officer of the county "who shall undertake to create any liability against the county, except such as he is by statute required to do", personally liable upon his official bond for such indebtedness. Section 1364, R. S. 1908, provides that when the county commissioners shall deem it necessary to create an indebtedness for making or repairing public roads or bridges, they may upon thirty days' notice submit the question to a vote at a general election, and that upon authorization by the people the commissioners "shall be authorized to contract the debt in the name of the county."

Having in mind these express statutory provisions governing the subject, I am unable to understand how it can be held that county commissioners have authority to do that which they are therein expressly prohibited from doing. *Bent County v. A. T. & S. Fe Ry. Co.*, 52 Colo. 609, 125 Pac. 528, quoted from in the majority opinion, has no application to the facts of this case. In that case it was stipulated "that the contract for the repairs was made on the 30th day of August, 1904; that on said date there was in the proper fund sufficient money to pay for the construction of said bridge; that the fund so on hand was afterwards consumed in the necessary repairs of other bridges and roads, before warrants could be issued for the contract in question", and it was held that the particular contract was valid, and "If any contracts for road and bridge work, or claims allowed against such fund were

illegal, they were contracts made and claims allowed subsequent to the making of the contract in question." In the case at bar there was neither a fund, nor a tax levy to create a fund, when the work was ordered or when the warrants were issued. Therefore, the indebtedness attempted to be created was not a liability against the county but, by statute, § 1217, *supra,* was a personal liability of the public officials who attempted to create it. There being no valid indebtedness against the county for this work the warrants issued therefor were equally invalid.

Section 1 of the Act of 1893, § 1375, R. S. 1908, has no application to the facts of this case. The act makes it the duty of the Board of County Commissioners of any county which "has, or shall have, any unliquidated and unpaid county warrants or orders, drawn on any fund, for the payments of which there are no funds in the county treasury of such county, and to pay which the incoming taxes already levied are insufficient", to make a special levy or levies, from time to time, to pay the same. Clearly "unliquidated and unpaid county warrants or. orders", as therein used, have reference to legal obligations, and none other. A county official may not deliberately order work done, and create an indebtedness therefor, and thereafter impose upon the public payment of the same, in face of the law expressly prohibiting such acts, and making him and his bondsmen personally liable for such indebtedness.

But apart from this, the judgment should be reversed. The object of the proceeding was to enjoin the county treasurer "from paying the warrants in question or disbursing any of the moneys created by the special levy of 1.7 mills; that the excess warrants of $22,210.69 be declared null and void; that as an incident to the injunctive relief asked, judgment be entered against the County of Arapahoe and the County Treasurer for the taxes paid by the plaintiffs respectively, by reason of the alleged illegal levy", with interest, etc. There were many such warrants, and the holders thereof were in no sense parties to the proceedings; and the moneys coming into the hands of the treasurer by

virtue of the special levy were beyond the control of private individuals, though the latter might have a claim against the county by reason of its collecting the same. Such claim, however, could be enforced by a suit at law under the statute, after having been presented to, and its payment refused by, the Board of County Commissioners. The trial court having very properly held that the temporary injunction should not have been granted, and refused to make it permanent, the right to recover therein the amount of the taxes paid necessarily fell with the equity case, such right being incident thereto.

I am authorized to state that Mr. Justice Bailey approves what I have said, and concurs therein.

Decided April 2, A. D. 1917.    Rehearing denied June 4, A. D. 1917.