## No. 10,594.

INDUSTRIAL BUILDING AND LOAN ASSOCIATION v. KNIGHT.

Decided March 3, 1924.

Action in mandamus.   Judgment for defendants.

*Affirmed.*

1.  COUNTIES—*Warrants—Payment.*   Where county warrants in payment for a county building were drawn against a fund created by special levy, mandamus will not lie to compel their payment in the absence of allegation and proof negativing the superior statutory right to payment of previously registered warrants of the same series.

2.      *Contracts—Waiver of Statutory Right.*   There is nothing in law or morals which prevents an adult of sound mind from making a contract with a county whereby he relinquishes or waives his right to any statutory remedy available to him, in the absence of such relinquishment or waiver.

3.      *Noncash Warrants—Payment.* Under the county government
act of 1887, noncash warrants drawn upon an anticipated special
fund and accepted in full satisfaction of claims against the
county, can be paid only by and through the fund drawn upon.
Such warrants do not operate as a debt against the county, nor
add to or increase its debt, and mandamus will not lie to com-
pel the county to levy a tax for their payment where the special
fund has become exhausted.

4.      *Indebtedness—Warrants.* Where one receives from a county,
warrants on a special fund in absolute payment of his claim,
the obligation of the county is at an end, and the fund being
exhausted, there is no authority vested in the General Assembly
to compel the county to render further compensation.

*Error to the District Court of Dolores County, Hon. W. N.
Searcy, Judge.*

Mr. F. R. LILYARD, Mr. M. A. SIMPSON, for plaintiff in
error.

Mr. GEORGE W. LANE, Mr. REESE MCCLOSKEY, for de-
fendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THIS is an action in mandamus to compel the board of
county commissioners of Dolores county to levy a tax to
pay three county warrants in the sum of $250.00 each, is-
sued by the county in November, 1894, for and on account
of the construction of a courthouse and jail. On final hear-
ing the court found in favor of the defendant and refused
the writ.

Sometime during the year 1894, Dolores county, through
its board of commissioners, resolved to build a courthouse
and jail. Proceeding as prescribed by the pertinent stat-
utes, the board, after having, by resolution, made an ap-
propriation therefor of $20,000, to meet which it made a
levy of 24 mills on the assessed valuation the same, ac-
cording to its estimate, being sufficient to produce approxi-
mately $25,000, directed the taxing officers to compute,

extend and collect the taxes levied. The first resolution or action of the board was for a levy of 24 mills, all of which apparently was to be made in the first year after the appropriation was made, but by subsequent action within a few days, the board spread the levy, at the rate of 2 to 2½ mills each year, over a period of ten years. It is not entirely clear from the record whether the total levy thus provided for, amounts to 24 or 25 mills, but that is not material. When, or after, these orders and resolutions of the board were made and entered of record in its minutes, it entered into a written contract with one Huddart, of date November 5, 1894—a previous contract of September 7, on the same subject having been abrogated and cancelled—whereby Huddart agreed to erect and complete the building for the sum of $20,000, which amount was to be paid in warrants and orders of the county drawn upon the county courthouse and jail building fund in the county treasury, the contract reciting that the appropriation had theretofore been made and a tax levied by the board to produce the money for such fund. It sufficiently and clearly appears from the records of the county board and the recitals of the contract, that the various resolutions and orders of the board were intended by the parties to be, and they in fact constituted, a part of the building contract. The contract provided for a cash payment at the time of its execution and further payments from time to time. As nothing could be realized from the 1894 appropriation and levy until after January 1, 1895, the county warrants which the contractor agreed to take and accept as payment for his work, were ordered drawn and issued against, and in anticipation of the collection of, the taxes theretofore levied by the board, which, in the circumstances, might be done, as provided by the County Government Act, Session Laws of 1887, p. 240, C. L. 1921, section 8697, et seq. The resolution also provided a form for the warrants, which were made payable to bearer, and were to be drawn upon the county courthouse and jail building fund. The warrants in this suit, and apparently the entire

series, aggregating the sum of $20,000, were presented November 10, 1894, to the county treasurer and endorsed "No funds." They bear no specific date further than indicated by the expression, "November Term, 1894." The date of the resolution is November 9, and the date of the contract is November 5, 1894. The record is clear, however, as stated, that the various orders and contract were made, and the warrants issued at the same time and as one transaction. On the face of each there was endorsed, as provided by the pertinent statute: "This warrant is payable solely from the said fund, and taxes levied to form the same collected, and not otherwise." Section 2 of the 1887 Act also provides: "The person or persons to whom such last named warrants and orders (meaning the so-called noncash warrants in anticipation of collection) shall be allowed and delivered shall be held to have accepted the same in full payment and satisfaction of the claim, to pay which the same was issued, and the obligation of said warrants is hereby limited as stated, and said warrants shall be paid only by, through and from the fund drawn upon, and the collected and uncollected taxes levied, appropriated, collected or paid into the county treasury  *  *  *. Said limited and last named warrants and orders shall not operate as a debt of said county, and shall not be held to add to or increase the debt or indebtedness of said county."

The board did not make the levy of 24 mills at one time, or in any one year. The only levies made were the annual ones for 10 successive years aggregating 24 or 25 mills, which the board assumed would produce about $25,000, and the annual levies aggregating at least 24 additional mills were made, and the amount of all these levies was collected and paid into the special fund. Some of the other warrants not involved in this action have been paid; others, including the warrants in question, have not been paid. There is now in the building fund a sum of about $1200. There is no charge in the complaint of a misapplication or diversion of the fund. No explanation is given why the levies made did not produce a sufficient fund to meet all

these warrants. Possibly the deficiency may have resulted from lower valuations of the assessable property.

To this complaint the defendant county filed an answer consisting of eight separate defenses. One is that Dolores county, at the time the warrants were issued, had an outstanding indebtedness in excess of the limitations fixed by the state Constitution. Therefore, the warrants, as well as the alleged .debt they represented, were invalid.

Another defense is that at the time the warrants were drawn there was nothing to the credit of the building fund for their payment, and, by the express provisions of the Act of 1887, the warrants were invalid.

There was also a defense that the statute of limitations barred the action. Another defense is that the contract itself with Huddart for the building was void and illegal and that the appropriation made therefor, and successive levies were each and all illegal. There were some other defenses not necessary to mention.

The eighth separate defense of the answer, and the one which the court held defeated the action, in substance, is that, assuming the debt of Dolores county not to be in excess of the constitutional limit, and further assuming that the various appropriations and levies made, and the Huddart contract and the warrants, and all proceedings in relation thereto, are valid and regular, nevertheless the county has complied with all the terms of the contract.

The view which we have taken of this case renders unnecessary discussion of some of the important questions which have been argued with marked ability and plausibility by counsel of both parties.

1.   It is well at the outset to emphasize that this is not an action by the holder of a county warrant who has a valid claim against the county which has issued, as representing the debt, a warrant which, for some statutory defect, is invalid. Neither is it an action to compel a county board to satisfy a valid warrant out of an existing fund which is sufficient for that purpose. On the contrary, it is an action to compel a board to make an additional levy to supply

a previously created special fund which has been exhausted. We call attention to this matter for the reason that no inconsiderable part of the briefs of the warrant holder is devoted to a discussion of the law applicable to facts which are not present in the case at bar. If, however, as seems to be contended by the plaintiff, there is now money in the special building fund applicable to the payment of warrants of this issue, it may not be applied to the payment of these particular warrants in the absence of allegation and proof negativing the superior statutory right thereto of previously registered warrants of the same series.

2. We pass now to a consideration of the eighth defense of the answer. Under the statutes that existed prior to the County Government Act of 1893, chapter 54, page 100, Sesson Laws 1893, C. L. 1921, sections 8853, 8854 and 8855, even though the outstanding debt of Dolores county, in November, 1894, did not exceed the constitutional limit of indebtedness, the county could not contract, or otherwise become obligated, to discharge or pay the warrants issued in this case, unless they were issued in anticipation and out of a fund to be realized from a previous appropriation and a levy made before the building contract was entered into. The statute of 1887, already cited, provides for warrants of two kinds or classes commonly called cash warrants and noncash warrants. Those payable on demand, or cash warrants, could be drawn and issued only when, at the time of issuance, there was sufficient money in the appropriate fund in the county treasury to pay them. When there is an insufficient fund in the treasury the county commissioners, however, may lawfully draw noncash warrants in anticipation of the collection of taxes theretofore levied for their payment, to the extent of 80 per cent of the total amount of the levy. We have already seen that these noncash warrants, when issued, must upon their face show that they are payable solely out of the anticipated fund upon which they are drawn, and the person to whom they are delivered is held to have accepted them in full payment and satisfaction of his claim against the county, to

pay which they were issued. The obligation of the county thereunder, as stated, is limited and such warrants can be paid only by and through the fund drawn upon. The statute also says that such warrants do not operate as a debt of the county nor add to or increase that debt.

It should be stated that the plaintiff does not seriously contend that, if this case is to be decided by the 1887 Act and other pertinent statutes then in force, including the County Government Act of 1891, Session Laws 1891, page 111, uninfluenced by the Act of 1893, Session Laws 1893, page 100, C. L. 1921, sections 8853, 8854 and 8855, there was authority for the issuance of these warrants as a debt of the county. But while not claiming that there has been a repeal of the statutes, plaintiff, nevertheless, contends that this Act of 1893 gives to the county commissioners the power, and, when the rights of the holders of unpaid warrants may not otherwise be satisfied, imposes upon them the duty to levy a special tax during subsequent years to take up and discharge them. Upon its face, and at first blush, it might seem that the board, in order to discharge such unliquidated and unpaid warrants, may be compelled, in a proper case, to make such levies until all the warrants are satisfied, irrespective of their validity and even though they do not constitute valid debts of the county. This statute has been construed by this court in *Commissioners v. Union Pacific Co.*, 63 Colo. 143, 165 Pac. 244. That was an action by the railroad company, as a taxpayer, to prevent the disbursement of money that it had paid to the county on a special levy to take up unliquidated and unpaid county warrants which were not paid by reason of the failure of such previous levy to produce a sufficient fund therefor.

One of the contentions of the railroad company was that the act was restricted to unpaid warrants outstanding at the date of the passage of the act, but this court held that it was equally applicable to unpaid warrants issued thereafter. The invalidity of the warrants in question in that case was predicated solely upon the provisions of the Act

of 1891, which seems to provide that a county board could make only one appropriation and one levy for warrants of the character there involved. Those warrants were drawn upon the permanent general county fund and the permanent general road and building fund, and were issued in good faith in proper amounts for materials furnished and necessary to be furnished and for labor and service done, such for example as salaries of county officers, the expense of the courts, ordinary labor on public roads and bridges, some of which were necessitated by casualities, like an unprecedented flood, which could not be anticipated. The court there was not considering any such case as we have now before us. There the funds drawn upon were permanent general funds of the county. Warrants at the time of their issuance were valid, legal debts of the county. Here the warrants were drawn on a temporary special fund. They were not at the time they were issued, and never since have they become, debts of the county. There the warrants were not accepted as full payment for the services performed, nor was there an endorsement on their face, as here, that they were accepted as full payment of a county obligation. Here there was a special written contract between the county and the person to whom the warrants were delivered, that the latter accepted them in full discharge of the county's covenants therein. Whatever may be the full meaning and scope of the 1893 statute, the exigencies of this case do not require us to decide. Certainly the language, however broad and general it may be, was not intended to cover, but if it was, the limitations of our Constitution and statutes prior to the Act of 1893 would prevent its application to warrants previously issued and unpaid, which were invalid as being inhibited by the Constitution of the state or some other statute under which they were drawn. In this case it should be borne in mind there was no existing fund in the county treasury upon which these warrants could be drawn. They were valid, if at all, and for the purposes of this opinion we are considering them as valid originally, only because they were drawn

in anticipation of the collection of taxes theretofore levied and for which an appropriation had been made. By the law of their creation, they did not constitute, and never could constitute, a debt of the county. Their payment was restricted by the terms of the act to the very fund when collected, which had been previously levied. The Act of 1893 as construed by this court gives the power to a county board to make additional levies for the purpose of creating a fund to pay outstanding unpaid warrants. Even assuming that the provisions of the 1893 Act apply—in the absence of a special contract of the parties to the contrary—to warrants drawn upon a special fund like the building fund in this case, certainly it does not apply to warrants which are at the time of the issue themselves invalid on the constitutional ground, or to warrants which, by the express terms of the contract of the parties, are accepted as full payment and discharge of the county obligation and restricted to a specific fund.

Warrants of that character never become a debt of the county but are merely to be satisfied, if at all, by assigning to the holder of them a fund theretofore created as the result of a previous levy. Nothing was decided in the *County Commissioners v. Union Pacific Railroad Co.* Case that bears upon the question here for decision. There is nothing in law or morals which prevents an adult of sound mind from making a contract with the county whereby he relinquishes or waives his right to any statutory remedy available to him in the absence of such relinquishment or waiver. Applying that principle, we have here a case where a contractor who erects a county building has agreed to accept, and does accept, as full payment and discharge of his compensation therefor, county warrants to be paid and satisfied out of a specific fund. This acceptance in law is an abandonment or waiver of the right, if any the contractor had, to compel the county commissioners, in case the fund for any reason was inadequate to satisfy the warrants in full, to make additional levies from time to time to pay the same. These warrants delivered to Huddart,

having been received as absolute payment of the county obligation, were as fully discharged, and the county's obligation at an end, as if they had been taken up and actually paid in money by the county. They were no longer a debt or obligation of the county and it was not only not the duty but beyond the power of the county to breathe life into extinguished warrants by making additional levies for their payment. There is no constitutional or statutory authority for a board of county commissioners to make a gift to any individual. If one makes a contract with the county, which the county in all respects has fully complied with, and has discharged all the covenants thereby imposed upon it, fully and completely, we know of no authority or power vested in the General Assembly to compel the county to render further compensation. After the county once discharges and pays a valid debt, either in money or in any other legitimate way, to the entire satisfaction of its creditor, we do not believe that our General Assembly could require, or that it intended by the Act of 1893 or otherwise, to compel, the county to make further satisfaction.

The judgment of the district court being in accordance with our views, it is affirmed.